**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT N. WHITE,** | : | **No. 1:07-CV-1483** |
| **Plaintiff** | : | **JUDGE SYLVIA H. RAMBO** |
| **v.** | : | |
| **CIBER, INC., ANN GRIFFITHS, and DENNIS MILLER,** | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

Before the court is a motion to dismiss brought by Defendants Ciber, Inc. ("Ciber"), Ann Griffiths, Vice President of Ciber, and Dennis Miller, an account executive for Ciber. (Doc. 8.) Plaintiff Robert White was a Ciber employee, working under Griffiths and Miller. Plaintiff charged all Defendants with wrongful termination, breach of written contract, violation of the Pennsylvania Wage Payment and Collection Law ("WPCL"), and breach of implied contract. For the reasons that follow, Defendants' motion will be granted in part and denied in part.

**I.     Background**

For purposes of this motion to dismiss, the following facts are drawn from Plaintiff's complaint and accepted as true. Plaintiff was hired by Defendant Ciber on May 27, 2005. He signed an Employment and Confidentiality Agreement ("Agreement") which was signed by Griffiths on behalf of Ciber. Plaintiff was paid $125 per hour with a forty-hour work week. The Agreement states that Plaintiff's employment is at-will, such that either Plaintiff or Ciber could terminate the contract "and the employment relationship at any time with or without cause or reason and with or without prior notice or warning." (Agreement ¶ 2.) Plaintiff worked on a

software implementation project undertaken by Ciber and the Pennsylvania Turnpike Commission.  The contract between Ciber and the Commission is estimated to end in or around October 2008.

Paragraph 8.3 of the Agreement permits Plaintiff to attend training or educational courses, but does not require him to do so.  Ciber does not assume the duty to pay for any or all such training Plaintiff might attend.  Rather, the Agreement indicates that Ciber may opt to pay for training; in that event, if Plaintiff's employment terminates within 90 days after attending or completing the training, Plaintiff would be required to reimburse Ciber for the cost of the course, including travel and living expenses.

On or around August 31, 2006, two Ciber project managers "directed [Plaintiff] to attend two . . . training courses, and to pay all costs associated with that training." (Compl. ¶ 20.)  The following day, Miller also directed Plaintiff to attend the two courses and pay for them himself, "and threatened consequences if he did not comply with the order, including pay reductions and termination.  Miller further stated [Plaintiff's] salary would be reviewed at a later date." (*Id.* ¶ 21.) Accordingly, in September 2006, Plaintiff scheduled and attended two week-long training courses.  He incurred a loss of $16,496.71 to attend the courses, including "cost, airfare, auto expenses and meals, and loss of pay for two weeks." (*Id.* ¶ 22.) Plaintiff contends that the Ciber's directive "was an abrogation of his employment contract." (*Id.* ¶ 24.)

This directive was interpreted by Plaintiff as an offer from Ciber to enter a new, implied contract for employment.  (*See id.* ¶ 25.)  The terms of the new implied employment agreement were that if Plaintiff attended and paid for the

training sessions, his employment would no longer be at-will; instead, he would be terminated or his benefits reduced only for just cause. (*See id.* ¶¶ 23-27.) Ciber "confirm[ed] the new implied contract by a) [a]ccepting the substantial benefit of [Plaintiff] funding his own training at a cost of $16,496.71, and b) [c]ontinuing to employ [Plaintiff] at the same rate of pay for the remainder of 2006" (*Id.* ¶ 27), and by "availing themselves [*sic*] of [Plaintiff's] enhanced value and expertise on a critical and lucrative project with the Turnpike Commission" (*Id.* ¶ 62).

On January 1, 2007, Plaintiff's rate of pay was reduced from $125 per hour to $75 per hour.  Plaintiff contested the wage reduction until May 31, 2007 when, unable to resolve the dispute in his favor, he resigned.

As a result of the wage dispute, Plaintiff filed a complaint in the Court of Common Pleas for Cumberland County, Pennsylvania, on July 20, 2007.  (Doc. 1-2.)  Defendants removed the action to this court on August 13, 2007.  (Doc. 1.)  On August 27, 2007, Defendants filed a motion to dismiss the following counts of the complaint: 1) wrongful termination against all Defendants; 2) breach of written contract against Griffiths and Miller; 3) violation of the WPCL against Griffiths and Miller; and 4) breach of implied contract against all Defendants.  (Doc. 8.)  Plaintiff consents to dismissal of the wrongful termination claim against all Defendants and the breach of written contract claim against Griffiths and Miller.  (Doc. 11 at 1.) The court will enter an order dismissing those claims without further discussion. The court will, however, examine the merits of the motion to dismiss as to the remaining charges.

## II.　　　　Legal Standard – 12(b)(6) Motion to Dismiss

Among other requirements, a sound complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not contain detailed factual allegations, but a plaintiff must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" to show entitlement to relief as prescribed by Rule 8(a)(2). *Id.* at 1965; *accord, e.g., Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). A defendant may attack a complaint by a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007), and all reasonable inferences permitted by the factual allegations, *Watson v. Abington Twp.*, 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff, *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007). The court is not, however, "compelled to accept unsupported conclusions and unwarranted inferences or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (quotations and citations omitted). If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss. *Bell Atlantic*

*Corp.*, 127 S. Ct. at 1965, 1974; *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007).

## III.        Discussion

The remaining claims on this motion to dismiss are for violation of the WPCL by Griffiths and Miller and for breach of implied contract against all Defendants.  The court will address each claim in turn.

### A.        The Wage Payment and Collection Law

The Pennsylvania Wage Payment and Collection Law provides a private right of action for any employee who has not been paid wages, fringe benefits or wage supplements owed pursuant to an employment contract, plus liquidated damages, attorneys' fees and costs.  *See* 43 Pa. Cons. Stat. Ann. §§ 260.9a (civil remedies); 260.2a (definitions); *Oberneder v. Link Computer Corp.*, 696 A.2d 148, 150 (Pa. 1997).  An "employer" under the WPCL is "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth."  § 260.2a.  Plaintiff argues that Griffiths and Miller, as officers or agents of Ciber, are "employers" liable with Ciber for violation of his rights under the WPCL.

The plain language of the WPCL states that "all" officers and agents of a corporation are liable for a violation under its terms.  Lower Pennsylvania courts,[1]

---

[1]  The Pennsylvania Supreme Court has not directly addressed the question of whether all corporate officers and agents are liable under the WPCL or, if not, which officers or agents may be held liable.  It affirmed, without opinion, a case in which the Superior Court limited liability to those

(continued...)

however, have held that a defendant's corporate title, without more, is insufficient to create liability under the WPCL. *Mohney v. McClure*, 568 A.2d 682, 686 (Pa. Super. Ct. 1990) (observing that the legislature did not "intend[ ] liability merely by virtue of holding corporate office") *aff'd*, *Mohney v. McClure*, 604 A.2d 1021 (Pa. 1992). Instead, they require a plaintiff to plead and prove that the officer or agent charged took an "active role" in corporate advising, policy-making or decision-making that led to the alleged violation of the WPCL before a corporate officer or agent may be considered an "employer" and subject to liability. *Hirsch v. EPL Tech., Inc.*, 910 A.2d 84, 88 (Pa. Super. Ct. 2006); *Int'l Ass'n of Theatrical State Employees, Local Union No. 3 v. Mid-Atlantic Promotions, Inc.*, 856 A.2d 102, 105 (Pa. Super. Ct. 2004); *Mohney*, 568 A.2d at 686; *see Bowers v. NETI Tech., Inc.*, 690 F. Supp 349, 355 (E.D. Pa. 1988) (denying motion to dismiss when plaintiffs alleged individual defendants were agents of corporate defendant and had "directly participated in the decision to terminate plaintiffs' employment and to withhold contractually agreed upon separation payments due plaintiffs").

---

[1](...continued)

corporate officers who had an active role in the corporate decision affecting wages. *Mohney v. McClure*, 604 A.2d 1021 (Pa. 1992). Justice Larsen dissented because he would have held that the plain language of the statute controlled, holding all corporate officers liable under the WPCL. *Id.* at 1021-22 (Larsen, J., dissenting). This simple affirmance is not an outright declaration of what the law is, but it is indicative of what the Pennsylvania Supreme Court might decide if presented with similar facts.

Pertinent to the court's evaluation of the state of Pennsylvania law are "relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data" including the public policy supporting previous decisions. *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 661, 663 (3d Cir. 1980). Opinions from inferior Pennsylvania courts are entitled to significant weight when there is no indication that the Pennsylvania Supreme Court would rule otherwise. *State Farm Mut. Auto. Ins. Co. v. Rosenthal*, 484 F.3d 251, 253 (3d Cir. 2007). The court must apply the law as it stands and not "participate in an effort to change it" merely because the court doubts the soundness of the rule. *Tarr v. Manchester Ins. Corp.*, 544 F.2d 14, 15 (1st Cir. 1976) *quoted in McKenna*, 622 F.2d at 663.

It follows that an officer or agent who does not have decision-making or policy-making authority, but instead carries out decisions made by others is not an "employer" under the WPCL. *Hirsch*, 910 A.2d at 90; *Mohney*, 568 A.2d at 685-86. "Absent some indication that he exercised a policy-making function in the company, [an officer or agent] is not among the class of persons who may be liable under the WPCL." *Cent. Pa. Teamsters Pension Fund v. Burten*, 634 F. Supp. 128, 131 (E.D. Pa. 1986) *quoted in Hirsch*, 910 A.2d at 91; *Mohney*, 568 A.2d at 686.

In the WPCL count of his Complaint, Plaintiff alleges that "Ciber has failed to reimburse [Plaintiff] for necessary training expenses he incurred totalling [*sic*] $16,496.17." (Compl. ¶ 53.)  His only allegations that Griffiths and Miller are also liable for violation of the WPCL are conclusory paragraphs which state that the WPCL cause of action "and the facts in support thereof, and the relief requested, are incorporated by reference as if they were set forth in full." (*Id.* ¶¶ 73-74.)  The complaint does not identify the specific facts that he believes support his claim against Griffiths or Miller.  There are no direct allegations that either Griffiths or Miller took an "active role" in corporate advising, policy-making or decision-making that led to the alleged violation of the WPCL.  *See Hirsch*, 910 A.2d at 88. Thus, the court is left to examine the general factual allegations in the complaint as they relate to each individual Defendant to determine whether Plaintiff has stated a claim for a violation of the WPCL as to each.  He has not.

## 1.   <u>Defendant Griffiths</u>

Griffiths "is a vice president/area director with [Ciber]" at its Mechanicsburg location and "was an employee, agent, and servant of Ciber." (Compl. ¶ 3.)  She signed, on behalf of Ciber, Plaintiff's employment and

confidentiality agreement.  (*Id.* ¶ 6.)  Plaintiff makes no allegations that she had any role in the alleged failure to reimburse Plaintiff for training expenses, the basis for his WPCL claim.  Nothing in the Complaint permits the inference that Griffiths had decision-making or policy-making authority for Ciber as to the alleged failure to reimburse.  Her corporate title is insufficient for liability to attach under the WPCL.  Thus, Plaintiff fails to state any facts sufficient to allege that Griffiths satisfies the definition of an "employer" under the WPCL.  This claim will be dismissed as to Griffiths.

### 2.   <u>Defendant Miller</u>

Miller "is an account executive with Ciber" and "was an employee, agent and servant of Ciber."  (*Id.* ¶ 4.)  He instructed Plaintiff to attend and finance two training courses.  He "threatened consequences if [Plaintiff] did not comply with the order, including pay reductions and termination."[2]  (*Id.* ¶ 21.)  Accordingly, Plaintiff scheduled and paid for the two, week-long courses, incurring expenses and lost wages of $16,496.71.  (*Id.* ¶ 22.)  Some months later, Miller sent Plaintiff an email informing Plaintiff that his wages would be reduced from $125 per hour to $75 per hour, effective January 1, 2007.  These allegations against Miller indicate that he was Plaintiff's source of information about the alleged adverse employment action.  The fact that Miller provided information to Plaintiff does not permit the inference that Miller participated in the decision-making, policy-setting, or advising process that led to the alleged failure to reimburse.  Without such allegations,

---

[2] Plaintiff attributes Miller's representations regarding these training sessions to Ciber, acting through Miller as its agent.  (Compl. ¶¶ 23-25.)

Plaintiff fails to state a claim that Miller was an "employer" under the WPCL.  This count will be dismissed as to Miller.

### B.   Breach of Implied Contract

An employment relationship in Pennsylvania is presumed to be at-will. *Veno v. Meredith*, 515 A.2d 571, 577 (Pa. Super. Ct. 1986).  Unless there is a statutory or contractual term to the contrary, the relationship is terminable by either party at any time.  *Marsh v. Boyle*, 530 A.2d 491, 493 (Pa. Super. Ct. 1987). Accordingly, the threshold inquiry when an employee brings suit for discharge is whether employment was at-will.  *Veno*, 515 A.2d at 577.  If it was, the employer's decision to terminate will stand.  *Id.*

A plaintiff-employee may rebut the presumption of at-will employment, *inter alia*, by demonstrating that he provided his employer sufficient additional consideration to continue the term of the employment contract for a "reasonable length of time" during which the employee could be fired only for cause.[3] *Darlington v. Gen. Elec.*, 504 A.2d 306, 314 (Pa. Super. Ct. 1986), *overruled on other grounds by Clay v. Advanced Computer Applications*, 559 A.2d 917 (1989). Additional sufficient consideration exists "when an employee affords his employer a substantial benefit other than the services which the employee is hired to perform, or when the employee undergoes a substantial hardship other than the services which he is hired to perform."  *Id.* at 315.  A "detriment commensurate with that incurred by all manner of salaried professionals" is not additional sufficient consideration that may rebut the presumption of at-will employment.  *Id.*  Whether a plaintiff has

---

[3] Defendants do not seek to dismiss this count for failure to allege the elements of contract formation.  Their only argument is that Plaintiff's allegations fail to demonstrate sufficient additional consideration to impose a term employment contract.

demonstrated additional sufficient consideration to rebut the presumption of at-will employment is a fact question for a jury "unless it is so clear that reasonable minds could not possibly differ over its resolution." *Greene v. Oliver Realty, Inc.*, 526 A.2d 1192, 1202 (Pa. Super. Ct. 1987).

The Pennsylvania Superior Court has noted that the "unusually persistent efforts" of an in-house recruiter and the recruiter's suggestion that an employee would be "particularly well-suited for the position" suggested a substantial benefit to the employer. *Cashdollar v. Mercy Hosp. of Pittsburgh*, 595 A.2d 70, 74 n.2 (Pa. Super. Ct. 1991). Superior work performance by an employee, however, is not a substantial benefit to the employer. *Donahue v. Fed. Express Corp.*, 753 A.2d 238, 245 (Pa. Super. Ct. 2000). Substantial hardship exists when an employee relocates a family to accept a new position, *Cashdollar*, 595 A.2d at 73-74, but not when the move was financed and facilitated by the new employer, *Permenter v. Crown Cork & Seal Co., Inc.*, 38 F. Supp. 2d 372, 380 (E.D. Pa. 1999). Detriments considered ordinary to all manner of salaried professionals are foregoing other employment opportunities to take a particular job, a heavy travel schedule leading to overtime work which was not compensated, *Darlington*, 504 A.2d at 315-16, or being reassigned to a new project unexpectedly, *Permenter*, 38 F. Supp. 2d at 380.

## 1.   Ciber, Inc.

Plaintiff charges that he was initially employed by Ciber under an at-will employment contract. According to this contract, he was not required to attend training nor to pay for training. Well into his tenure at Ciber, two Ciber employees and Miller approached him and suggested "a new working relationship, under which

[Plaintiff] would attend and fund his own [training], and use his enhanced talent on behalf of Ciber, to greater assist Ciber in fulfilling its contract obligation to the Turnpike Commission." (Compl. ¶ 60.)  Plaintiff accepted the new arrangement. He funded and attended two training sessions and "continued to serve Ciber as an employee, continued to consult on the Turnpike . . . assignment, and further, continued to receive his same pay rate." (*Id.* ¶ 61.)  Ciber accepted the new arrangement by using Plaintiff at his training-enhanced value, accepting the benefit of his having paid for training and forfeited his hourly rate for the time of the training, continuing to employ Plaintiff, "thereby removing the threat of termination at-will" and continuing to pay Plaintiff his normal rate of pay, "thereby removing the threat of a substantial pay reduction." (*Id.* ¶ 62.)

Plaintiff asserts that this series of events resulted in a new implied contract of employment, one that required Plaintiff to use his enhanced expertise on behalf of Ciber and Ciber to "continue to compensate him at his agreed upon rate of $125 per hour, or an amount substantially similar, and would not terminate him without just cause." (*Id.* ¶¶ 63-64.)  Ciber breached this implied contract on January 1, 2007 by reducing Plaintiff's salary to $75 per hour.  Plaintiff worked until May 31, 2007, his resignation date, at the reduced rate resulting in a loss of $41,600 for the hours he worked.  Moreover, had Plaintiff not resigned because of the salary dispute, he would have "reasonably expected" to continue working for Ciber for an additional sixteen months. (*Id.* ¶ 69.)  His loss in compensation for those sixteen months is an additional $320,000.

These facts are sufficient to allege that Plaintiff provided Ciber sufficient additional consideration to impose an employment contract for a

reasonable amount of time.  Incurring an expense of $16,496.71 to attend training sessions demanded by his employer but not required by his employment contract is, for purposes of this motion to dismiss, a substantial hardship other than the services which Plaintiff was hired to perform.  Whether a factfinder will agree with Plaintiff, or determine that this kind of training expense is commensurate with the detriments incurred by all manner of salaried professionals is a question to be resolved at a later date.  The motion to dismiss the count for breach of implied contract against Ciber will be denied.

### 2.   Individual Defendants

Plaintiff seeks to hold the individual Defendants liable for breach of the implied employment contract by incorporating by reference all facts stated in support of that cause of action, (Compl. ¶¶ 73-74), but "[i]n Pennsylvania, a person who is not a party to a contract cannot be held liable for a breach by one of the parties to a contract." *Fleetway Leasing Co. v. Wright*, 697 A.2d 1000, 1003 (Pa. Super. Ct. 1997); *accord Juniata Valley Bank v. Martin Oil Co.*, 736 A.2d 650, 663 (Pa. Super. Ct. 1999).  Thus, as a general rule, corporate officers are not liable for a corporation's breach of an employment contract "unless the corporate officer assumes a personal obligation in the contract itself." *Donohue v. Custom Mgmt. Corp.*, 634 F. Supp. 1190, 1200-01 (W.D. Pa. 1986); *Leslie v. Phila. 1976 Bicentennial Corp.*, 332 F. Supp. 83, 93 (E.D. Pa. 1971); *see* Restatement (Third) of Agency § 6.01 ("When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, . . . the agent is not a party to the contract unless the agent and third party agree otherwise.").  Plaintiff's complaint simply

does not allege facts stating or suggesting that Griffiths or Miller were parties to the implied employment agreement or assumed a *personal* obligation thereunder.

   Plaintiff argues in opposition to the instant motion to dismiss that this court should read the allegations against Miller to infer that Miller may have acted outside the scope of his authority from Ciber by directing Plaintiff to attend and finance the training sessions.  If so, Plaintiff submits, Miller did take on a personal obligation in creating a contract between himself and Plaintiff.  Plaintiff's complaint does not support this argument.  It is absent of any allegation that his employment contract, written or implied, was between himself and Dennis Miller as an individual.  To the contrary, Plaintiff refers to himself as a Ciber employee, both before and after entering the alleged implied employment contract.  (Compl. ¶¶ 1, 6, 61 (Plaintiff "continued to serve Ciber as an employee" after having "accepted the new arrangement."), 62, 64, 66.)  He attributes the statements by Miller to Ciber. (Compl. ¶¶ 23 ("The directive of Ciber and its agents for [Plaintiff] to both attend training and fund it himself was a clear violation of his employment contract."), 24 ("The directive of Ciber for [Plaintiff] to attend and fund training was an abrogation of his employment contract."), 25 ("The directive of Ciber to attend training or be fired . . . ."), 27 ("Ciber, through its actions and course of dealing did confirm the new implied contract . . . .").)  He identifies Miller as an employee of Ciber, not his independent employer under the alleged implied contract.  (Compl. ¶¶ 4, 60 ("Plaintiff was approached by Ciber employees Wingert, Marks and Miller regarding a new working relationship . . . .").)  These facts simply do not provide support for the inference that Miller intended to obligate himself personally on an implied employment contract.

Without factual allegations that Griffiths or Miller assumed personal obligations in the alleged implied employment contract, they may not be held liable for a breach thereof.  Accordingly, the motion to dismiss the claim for breach of implied contract will be granted as to Griffiths and Miller.

**IV.**      **Conclusion**

For the foregoing reasons, Defendants' motion to dismiss will be denied in part and granted in part.  An appropriate order will follow.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  November 14, 2007.

14

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERT N. WHITE,               :    No. 1:07-CV-1483

        **Plaintiff**        :    **JUDGE SYLVIA H. RAMBO**

           **v.**                  :

**CIBER, INC., ANN GRIFFITHS,**    :
**and DENNIS MILLER,**                

        **Defendants**     :

## O R D E R

In accordance with the foregoing memorandum of law, **IT IS HEREBY ORDERED THAT** Defendants' motion to dismiss (Doc. 8) is **GRANTED** in part and **DENIED** in part.

The motion is **GRANTED** as to:

1) all Defendants on Count One;

2) Defendants Ann Griffiths and Dennis Miller on Count Two;

3) Defendants Ann Griffiths and Dennis Miller on Count Three;

4) Defendants Ann Griffiths and Dennis Miller on Count Four;

5) Defendant Ann Griffiths on Count Five; and

6) Defendant Dennis Miller on Count Six.

The motion is **DENIED** in all other respects.

                 s/Sylvia H. Rambo
                 SYLVIA H. RAMBO
                 United States District Judge

Dated: November 14, 2007.